Second case on the block is 2-18-0752, Barbara Crowley, individually and as Special Administrator of the Estate of Robert T. Crowley v. C. Lincoln Athlete v. Empire Fire and Marine Insurance Company Defendant Appellant Arguing on behalf of the Defendant Appellant, Mr. Brian A. O'Gallagher Arguing on behalf of the Lincoln Athlete, Mr. Peter C. Morrison Mr. O'Gallagher Thank you, Judge. Please read the court. This case comes before the Court on a matter of first impression. No Illinois court has yet considered whether an insurance policy that provides excess coverage for auto liability can contain an exclusion that negates coverage for losses that arise out of an accident that occurs while the insurer is under the influence of alcohol or drugs. I respectfully submit that Illinois public policy does permit an excess carrier to enforce a DUI exclusion in an excess policy and that the trial court erred when it held the exclusion at issue in this case was void as a matter of public policy. I also submit that the issue of whether the DUI exclusion contained in the Empire excess policy at issue in this case is enforceable. I submit that that issue is not controlled by the First Districts, ruling in the Hertz Corporation v. Garrett case. First of all, is there a difference generally between the basic coverage and excess coverage and how they should be treated? Absolutely, Judge. I think it was the Fogle v. Enterprise leasing company of Chicago case which drew the distinction in this specific context of coverage that is purchased by a renter that provides liability protection over and above the liability protection that's required by statute. Obviously, the Illinois Vehicle Code has statutory requirements for liability protection that apply to car rental companies. That level of liability protection is not at issue in this case. Right. But even in excess coverage, which is at issue here, aren't exclusions in insurance policies generally required to be both conspicuous and phrased in clear language? They need to be clear and unambiguous, that is correct, Judge. And conspicuous. I mean, noticeable. When you look at the policy, shouldn't the exclusions jump out at you? Jump out? I think they need to be clear and they need to be worded in clear language and they need to be legible, certainly. And were they here? Well... For example, were they in bold? I believe they were not capped. I'm not sure if they were in bold. But we need to draw a distinction here, Judge, because there's two things going on. There's a rental contract that is actually presented to the renter and there's an insurance policy. That's separate. Yes. And the renter doesn't actually receive the insurance policy. The insurance policy is in the record and the rental contract is in the record. Now, the insurance, the rental contract contains provisions that say it's, we've all seen, it's a carbon copy document, it's a two-sided, it's presented with printing on both sides. And I don't believe there is any issue with how legible the rental contract was. Certainly that was not argued in the trial court. That was not raised. But the exclusion, I'm more, I shouldn't say I'm more concerned, but I think the issue before you was the enforceability of the exclusion in the actual excess policy, which I clearly admit, the renter did not receive. But I don't, I would not agree that the rental conditions were hard to read or hard to discern. I don't think, one, that issue was raised in the trial court, and two, that issue would need to be raised by the actual renters of the vehicle rather than Ms. Crowley, who was the unfortunately injured part. Well, if we were talking about the renter who was driving under the influence of alcohol, would you be making a different argument than you're making here? No. But we would have to see if that renter argued, hey, I didn't know I couldn't drive under the influence of alcohol. I did not know that my consumption of alcohol or drugs would void my liability protection. If the renter made that argument, we'd have to consider issues that were just raised by Judge Burkett's question. But that renter is not before the court and is not making those arguments. I just want to make sure I've answered your question. The argument below was public policy. Correct. It addressed the public policy question. Correct. On the public policy question, Judge, I believe the trial court erred in not following the analysis laid out by the Supreme Court in the Progressive v. Liberty Mutual case and the Founders Insurance Company v. Munoz case. In both of those cases, the issue presented was whether the court should invalidate an exclusion in a liability policy. In both those cases, the liability policy provided primary coverage that was required by statute. But in both cases, the issue was whether those exclusions should be invalidated as a matter of public policy. And the Supreme Court, in both those cases, said those exclusions are going to be enforceable because they do not conflict with a specific provision in the Illinois Vehicle Code or the Financial Responsibility Act. Here, there was never an argument that the DUI exclusion and the Empire Access policy conflicted with the statutory provision.  They focused instead on what they claimed was a controlling statement of public policy in the Garrett case. But the Garrett case, for reasons we've explained in the briefs, does not control the issue of whether or not a DUI exclusion can be enforced at all. And it certainly doesn't control the issue of whether a DUI exclusion could be enforced in an excess policy. So I think you've got to look at the statement from the Illinois Supreme Court in the aggressive opinion which says, and again, they were considering the issue of whether they should invalidate an exclusion based on public policy concerns. And they instructed, because the requirement to maintain liability insurance is statutory in origin, any restrictions on the insurance required to comply with the law must also emanate from our statutes. So that is clear direction. And I should note the progressive was, I think, a 2005 case issued about 15 years after the Garrett case. That is clear direction I would submit that the courts in this State are going to only invalidate exclusions and liability policies when there is a conflict between the exclusion and a statutory provision, which was just never demonstrated here. Ginsburg. Really, you're saying that this policy that was obtained on the rental was an excess It was a policy in excess of the original policy. Is that what you're saying? Correct. I'm saying it provides excess coverage. Right. But is that what the owner was told or the buyer was told when they go to rent a car? Do they say, oh, this is in excess of your regular insurance? Or, I mean, I don't know. I've rented cars. I know they always try to sell you this. But really, it is in excess. Yes. What the renter is told, Judge, is that it is called supplemental liability insurance. Now, the – Supplemental. Right. The vehicle code requires that companies like Enterprise provide $100,000 of liability protection to renters that use their vehicles. That coverage exists here. This coverage, the coverage that was sold by the Empire policy, only applies after the exhaustion of that primary coverage, which is required by statute. So at no point has anyone argued that the circumstances of this unfortunate accident void the statutorily required $100,000 liability protection that is still available to the renter. Well, this is a little bit convoluted. The renter in this case was John Bruin. The operator was his son, Thomas Bruin. But he was an authorized driver, correct? Correct. As opposed to one of the other cases where the driver was given permission but was not a listed authorized driver. Correct. I can't remember the name of that case, but I know that's a distinction. Or gave the wrong age. That was an issue in Garrett. That was also an issue in Colville. And that was an issue in some other cases. I thought there was a Hertz case there, too, somewhere. Well, and Garrett and Hertz are the same case. I'm sorry, I say Garrett. I say it. Okay. But, yes, that is we've never raised an issue that Mr. Bruin, Thomas Bruin, who drove the vehicle, is not insured, nor has anyone argued that he's not entitled to the $100,000 in statutory liability protection. We're really focusing on the excess covers that's provided by the Empire policy. And we would submit that that is a purely private contract. In the Folt case, Judge, they drew the distinction between insurance that comes in at that statutory level and provides the coverage provided by the statute can be viewed by the courts in the public policy analysis as a quasi-public contract. This Empire policy is not a quasi-public contract. Purely private. Correct, Judge. And then I think the other point we would note is in the Munoz case, which followed the Progressive case, there's another instruction from the Supreme Court about this public policy argument. And it says, because, again, in Munoz there was an argument that the exclusion issue there, which negated coverage for drivers without a valid license, there was an argument that that was a voice against public policy. And the Munoz court enforced that exclusion and further stated that they recognize, depending on the circumstances of a particular case, any exclusion may result in no coverage from which injured third parties may be compensated. But they went on to say that those types of coverage gaps implicate policy concerns that are properly considered by the legislature, not this court. So I think that's where the trial court erred here. The trial court, respectfully, I would suggest, did not look at Progressive and Munoz the way that the trial court was required to. Because those, in my mind, are very, very clear expressions to the trial courts throughout the state that when this public policy argument comes in, there has to be a statutory basis to invalidate the exclusion. And without the statutory basis, the party that's trying to invalidate the exclusion just can't meet their burden. And I don't think they met their burden. Are these exclusions in excess coverage policies pretty much standard throughout the industry for drunk driving? I would say they are. I also represented the enterprise companies that were sued in this action, Judge. They're not a party to this appeal because they were dismissed. I looked at other states, California, some other states that have approved. But generally speaking, these exclusions have to be prominent in the policy. And again, we get that distinction, Judge, of whether the renter ever saw the policy. And typically they do not. But I think, yes, these types of exclusions have been examined. I cited a case in New Jersey where the actual exclusion in this empire policy was found to be compliant with New Jersey public policy. There have been other cases that get to different results in different contexts. Sometimes the different results are based on a reasonable expectations analysis. And so those courts at times in other states have focused on, well, let's focus on the reasonable expectations of the renter. Again, I don't think that this is that type of case because the Bruins are not before the court and not arguing that, hey, we had a reasonable expectation that we could operate this vehicle under the influence of opiates and cocaine. I'd be skeptical that that argument would be compelling. But that argument hasn't even been advanced. But there have been cases, Judge, and we've cited them where these types of exclusions have been given effect in excess policies by other states. I think it's a matter of the only Supreme Court has said that carriers aren't obligated to cover every risk and they can't exclude certain risks. And you can see that this type of risk does make sense to exclude. But as your opponent points out, you know, if you look at all of the exclusions that this policy sets out, this insurance company would never have to pay this excess policy. Well, and I think there is an argument on that. You're right, Judge, in the response brief where Ms. Crowley's counsel goes on to say, well, they could void coverage for running a red light. Right. They could void coverage for speeding. And my response to that is that those are hypothetical scenarios that we don't need to consider. And that's just not as self-serving as it sounds. That comes right out of Munoz, Judge, because the same argument was made in the Munoz opinion in the Supreme Court. The people that were – the parties that were trying to invalidate the exclusion said, well, it could be – that could be applied in this circumstance, that circumstance. And the Supreme Court said when you're considering the applicability of an exclusion in a particular case, the court, quote, need not speculate as to the myriad of other factual scenarios to which the exclusion might apply. Close quote. That's Munoz, 237 millisecond and 440. And I think that that concept is applicable here. We're not voiding coverage. We're not arguing that there's no coverage because Mr. Bruin ran a red light. We're not doing that. We're arguing that there's no coverage because he operated the vehicle under the influence of drugs. He was convicted of doing so and an unfortunate accident occurred. So we wouldn't waste your time. But, again, I'm not – I think that rather than trying to sell you on my good faith, which isn't the issue, the issue is you've got a set of facts and they make the exclusion applicable. They're very – the facts here are very clear. We don't need to worry about other hypotheticals. There has not been any statutory basis offered to invalidate this exclusion. Well, we can also look at other grounds to invalidate the exclusion, correct? And if it is – if we were to determine that this exclusion is injurious to the public welfare generally, that would be a ground, correct? That is true. The precise statement from the Supreme Court has been a contractual provision will not be invalidated on public policy grounds unless it is clearly contrary to what the Constitution, the statutes, or the decisions of the courts have declared to be the public policy of the Illinois court, as you point out, Judge, unless it is manifestly injurious to the public welfare. Now, here we don't have a prior case because I don't believe that Garrett establishes public policy in this area. We don't have a statute. We don't have a constitutional provision. So you're quite correct, Judge, the manifestly injurious statement could apply here. Now, I don't think that's been really argued in the briefs. I think that – Well, it's probably the only hook they can hang their hat on. But the – there's no question that in this case it's injurious to the plaintiff. Yes, Judge. Well, what it is – But the other side is that excess coverage would probably be, if that was the case, might be eliminated from these policies or maybe not make them available to the general public anymore. It would certainly be more expensive and to the extent that it would be available at all. If you – if a court is going to say to, you know, nationally based insurance carriers you have to insure – Drunk driving. Drunk driving, it will have an impact. And I'm not smart enough to figure out exactly what that impact is, but it will have an impact. And I think – I just don't think you need to get there because the overriding or the history of the law in this area is that in Illinois the courts have allowed carriers to restrict the risk that they insure. And that this is certainly a logical risk to exclude. And I think the fact that this is an excess policy even strengthens that argument. Because I've cited some cases in the brief. One is the Sazafsky v. Maher case where the courts even allow an excess carrier in a policy as you do an auto dealer to exclude liability coverage for the dealer's customers, which in a primary policy would be impossible to do. So I think – and I respect that this is a tough situation. I really do. And I respect – and I'm mindful of what occurred here. And it's unfortunate. But I think the New York court addressed that when they just said that type of gap, that type of falling through the cracks of not getting that type of fund to recover from is best addressed by the legislature rather than the courts on a hey, this case is really bad type of basis. It's tough to make policy that way. Is the fact currently bad? Are the facts over there not so bad? It really should fall to the legislature to make it uniform. I think I might be at the end of my time. You are. All right. We don't have time for rebuttal. Thank you. Mr. Morse. Yes, Your Honor. Good morning, Your Honor. The – as you know from our argument, over 25 years ago, the appellate courts decided in a law that a DUI exclusion was against Illinois public policy. And as Your Honor has pointed out, the courts – and as the courts have said, can decide what's public policy and what's not public policy. There was no statute involved in Hearst v. Garrett that said a DUI exclusion was void. The court decided on its own, looking at public policy, whether this was an exclusion that went beyond what the court decides public policy requires. Well, this is an exclusion and supplemental policy, correct? Not a primary policy. So why don't you go to that issue? Because that's really where the problem is. Well, a lot of these cases that we cited dealt with situations beyond the primary statutorily required minimum limits. In fact, one of the policies that was cited by the Hearst v. Garrett case, the one from Pennsylvania, was another million-dollar policy. Those were cited by the appellate court in Hearst v. Garrett. We – they cited four other states outside Illinois, including two previous Illinois cases that had void of the policy. And then subsequent to Hearst v. Garrett, the Arizona Supreme Court in the Philadelphia v. Barrera case in 2001, it was exactly the same assessment, an actual separately purchased supplemental rental policy, and the court voided the DUI exclusion in that policy, too. There's no rule that says public policy stops on a primary policy. It's public policy is public policy. The courts have to decide exclusion by exclusion, case by case, did this exclusion go too far? And the Illinois courts have found that DUI exclusion goes too far. They found, at least like 14 other cases, where the courts have decided that the exclusion of issue went too far. They have to balance public policy, which the courts can decide, versus the insurance companies that are going to draft their contract the way they want it to be. They don't get to always draft a contract any way they want to. Well, apparently here we don't have the restriction that some states have, that it has to be a clear and obvious exclusion. Because here, as counsel said, the party, the renter, doesn't even see the policy. The renter sees the agreement, the rental agreement that alludes to the policy, but it doesn't even have to see the policy. Yeah, he's got totally the dark side. He never offered the policy to the people who pay for these policies. You'd think that alone would be the end of the question. I'm assuming that that is an industry-wide issue. I haven't rented a car in a long time, but I don't remember starting my vacation looking at a policy and going, hmm. Right, and whoever agrees to get the backside and the fine print on those virtually illegible insurance rental contracts. But, you know, that's a sub-issue here. But really, I think the public policy is the big issue, and the courts have decided, and I think the Empire has given no reason why now we're going to change a law that's been in effect for 25 years and never reversed. Well, in 2005 or 2006, Progressive, I think, says directly and implicitly that the legislature does not prohibit exclusions. They have to be looked at on a case-by-case basis. And two exclusions that auto policies have been enforced, and they cited the two. Progressive enforced a pizza delivery exclusion. The Supreme Court apparently felt that that risk should not be imposed upon the employee's own personal lines auto policy, but kept with the pizza restaurant. So they enforced that exclusion. In the Fowler v. Munoz case, their driver didn't even have a valid license at all. So those two exclusions were enforced. That's the only two exclusions that they found that were enforced in the automobile liability insurance policy situation. As we've said in our briefs, insurance policy, liability policy in general in the public policy component, and auto policies have a specifically high level of public policy. And those two exclusions got past it. Nothing else has gotten past it. We've cited 14 other cases where public policy precluded the limitation that the insurance has been trying to impose in their country. Have you looked at the case called Bonner v. Ace American Insurance Company? I'm sorry, I'm not familiar with that case. Where it was a, and I can give you the site to take a look at it. It's 359 Hill Ave. 3rd, 621. And that was an exclusion from a DUI. And the argument in that case was kind of like, like I said to your opponent here, was then is any criminal case, every criminal act is going to be excluded. And that case, that Bonner case said that would make an observed result, but a DUI is clearly a criminal act which can be excluded. I'm sorry. I'm a liable witness to this case. I'm not familiar with it. The only reason I know the case is because I was the trial court judge that got reversed. So that's how I know the case. So that was an insurance policy. Yes. That had a DUI exclusion. It did have a DUI exclusion. And was it before or after the Hertz v. Garrett incident? It was 2005. And did they mention Hertz v. Garrett? So maybe no one pointed it out to the court that 27 years ago the courts had decided in public policy avoiding that exclusion. Right. So that can happen sometimes. And somehow we missed it too, so. Well, again, Hertz v. Garrett is the primary policy, correct? It actually wasn't a policy at all. You know, it was just something that Hertz provided. But they cite those six cases that did involve insurance, and they didn't seem to have any problem with whether it's just the Hertz providing protection or an insurance company providing protection. And then they also expressly rejected the insurance company's attempts to limit it down to a minimum financial responsibility. And the second question, no, the exclusion voids. It doesn't have to be tabulated in our policy. You don't cite a constitutional provision or statutory basis to invalidate the exclusion. Your argument is purely that it's manifestly injurious to the public welfare. Correct, and that all these public policy cases that avoid exclusion didn't rely on some statute. Would you agree with opposing counsel's contention that on the policy side, policy area, excess coverage is going to go way up if we were to rule in your favor? I think if this court doesn't follow Hertz v. Garrett, we're going to have an industry-wide exclusion for DUI situations, and it will be a nightmare situation. And we're going to have legal marijuana in this state pretty soon. And we have distracted driving like crazy. There's a million crimes that violations of the Motor Vehicle Act that this insurance policy is going to avoid. And it would be, I don't want to say the end of all the liability insurance, but at this point. Texting while driving is a big hazard right now. Right, and that's not covered by the umpire policy because it's a violation of, it's illegal to text while driving. Distracted driving is illegal. The umpire is not going to cover it. They swear they're not going to enforce the exclusion in that situation, but their policy just as clearly says that. And we may be back when that, when they do try to enforce that exclusion. Well, but if we go back to Progressive, which is 2005, not all, not your 25 years ago, but it says, hey, the legislature did not prohibit exclusions. Munoz says it's a legislative job, not a judicial job. Once it's brought to our attention, we should look at it. But to make a bright line, this exclusion must always be stricken, that's not our job. That's the legislature's job. The Supreme Court didn't say that the courts cannot create public policy. And the law is very clear that the appellate court can determine what public policy is. Well, technically it's supposed to be the Supreme Court, but it starts maybe here and goes forward. Correct. But it's still, I mean, I'm still worried about the legislature. I mean, they don't like us anyway, so that's not the point. But they have a job. Why should I do their job? Because the court sees the unlimited variety of situations and exclusions that insurance companies are going to assert and apply, and the court does it case by case. Legislature, you know, it's possible that if this court decides to not follow personal security, maybe there will be a statute of appeals. But that would be a lot of legislative work every time a court has a situation. It has to go to the Supreme Court to get it resolved. That's why the courts have the public policy power to declare what they have. Thank you. And we ask that you affirm the following. Thank you. Well, Mr. Gallagher, if I don't say something or this court doesn't say something, how is the legislature supposed to know that there's a problem? I don't suppose ñ and I don't mean this maliciously, but I don't suppose the rental and insurance industry is going to go to them and say, We've got a problem here. You've got to fix it for us. I mean, somebody has to address the issue. I don't think Mr. O'Gallagher sees an issue. Well, I think the legislature needs to address societal problems in this area the way they would address any societal problem. And that's through hearing from their constituents and doing whatever public policy work that is appropriate. And I don't mean to be dismissive of that. Honestly, I don't know how the folks in Springfield decide what's on their agenda. I do know that they've got a fairly comprehensive insurance scheme in Illinois that applies to the operation of vehicles. And they put that in place many years ago. I remember non-mandatory insurance. I remember insurance becoming mandatory. I was a public defender for a while. I remember the first charge of driving without insurance. So they get there, and they set up their framework how they set up their framework. I think a good point to keep in mind is we're debating now issues over that statutory framework. We're debating what happens after the rental car company provides $100,000 in liability coverage that it is legally bound to require. What would your position be if it weren't an access policy? If it weren't an access policy, Judge, I think you'd still have to go back to the Founders and Munoz analysis. And I'm not here before you on a primary policy, but I think the Founders versus Munoz and the progressive cases show you the analysis. And the analysis is, you know, counsel made a point where it said, well, there's only two exclusions that they found enforceable. Well, those are the two exclusions that were presented to them. And there's an exclusion that they thought wasn't enforceable. That's the State Farm versus Smith case where they said, one exclusion that applies just to Valley Parkers isn't enforceable. The test, Judge, that they enunciated in those three cases is, does the exclusion violate the omnibus provision in the Illinois Vehicle Code? The omnibus provision says that if you have an owner's policy, the coverage that applies to the owner has to apply to the permissive user as well. You can't have a situation where the permissive user gets less coverage than the owner of the vehicle does. And if the exclusion negates coverage for a particular use as to the owner and the permissive user, then it's enforceable. And I don't know what will happen if, you know, if future exclusions that are more aggressive are presented in primary policies. I think at some point the legislature would act if they find that the coverage in primary policies are getting too restrictive. I don't think the legislator, frankly, is going to set policy in the area of excess coverage. I only say that because they've never done so. And I think, and I don't mean to minimize it, but I think they've got plenty to do. And I doubt they're going to set up a comprehensive statutory framework for excess coverage. Well, they could always raise the mandatory minimum. Absolutely. And they've done that. And they've done that before and they'll do that again. And they may do that again. I think they have to over time as inflation takes hold and things like that. But the concept would be there is statutorily required insurance, and then that gets that quasi-public obligation, and then there's other purely private insurance, which is what we have here. I would just, well, the things that the counsel said that I would take issue with about the out-of-state authority he cited, the discussion of the case law is fairly comprehensive in the briefs. I would submit that all the cases he cited from out-of-state that invalidated DOI exclusions did so based on a conflict between the exclusion and the statutory framework in that particular state, which doesn't exist here. Your comment, Judge, about the Ace v. Bonner case, I'm aware of the case. The reason it's not in my briefs is because it deals with first, I construe it as dealing with what I call first-party insurance. In other words, the insurance there that was owed, I think it was credit insurance, that would actually pay out to the driver who was operating under the influence. So I didn't find it to be implicated in the same public policy concerns, at least that Ms. Crowley was arguing. It's actually different. Yeah, where liability coverage is at stake. Here, there's no two ways about it. If we had a case where Mr. Bruin was asking for an insurance benefit after operating under the influence of opiates and drugs, I think it would be a simpler question. I don't mean to be flip about it. But I think that was the type of issue that was presented in the Bonner case. Yeah, right where he hit the tree, I think. You're right. I think it does show, and I probably should have said it for the position of, hey, DOI exclusions are not per se invalid. And that was a primary policy, Judge, as you point out. So thank you for raising that issue. Are there any other questions I can address? Thank you. Thank you. We thank both parties for the quality of the arguments today. The case will be taken under advisement. A written decision will be issued at the court. The court stands in recess. Thank you.